LUNDEEN, Respondent, v. SCHUMACHER et al, Appellants.

(216 N. W. 883.)

(File No. 6415.   Opinion filed December 20, 1927.)

*Buell F. Jones,* Attorney General, *Benj. D. Mintener,* Assistant Attorney General, and *Bruell & Henderson,* of Redfield, for Appellants.

*J. M. Berry,* of Ipswich, and *F. E. Snider,* of Faulkton, for Respondent.

CAMPBELL, P. J. This is an appeal from an order overruling a demurrer to plaintiff's complaint upon the ground that the same did not state facts sufficient to constitute a cause of action as against the defendant and appellant the state bonding department of the state of South Dakota.

We adopt the statement of appellant's brief as to the substance of plaintiff's complaint as follows:

"This action was instituted by the plaintiff for the purpose of recovering judgment against A. W. Schumacher, as sheriff of Edmunds county, S. D., for an alleged conversion, and seeking to hold the defendant the state bonding department liable for the amount of said judgment and interest, and to bind the state bonding department with the defendant A. W. Schumacher for the payment thereof.

"It appears from the complaint of the plaintiff that A. W. Schumacher was, prior to the 18th day of September, 1925, the duly elected, qualified, and acting sheriff of Edmunds county, S. D., and that he had filed his official bond with the county auditor of said county, said bond having been executed by the said Schu-

macher as principal and the state bonding department of the state of South Dakota. It further appears that the plaintiff was the sole owner of a certain stock of merchandise located in the town of Loyalton, in Edmunds county, S. D., and that the defendant Schumacher, as sheriff of Edmunds county, under and by virtue of a warrant of attachment issued out of the office of the clerk of the circuit court of Edmunds county, in an action wherein the First State Bank of Loyalton was plaintiff and P. A. Lundeen was defendant, wrongfully and unlawfully took and seized the stock of merchandise, and converted the said property to his own use. The complaint further alleges that, after said conversion, an action was instituted by the plaintiff against the defendant A. W. Schumacher, as sheriff of Edmunds county, S. D., and a judgment was duly entered in favor of the plaintiff and against the defendant Schumacher for the wrongful conversion of said property, said judgment having been entered on the 24th day of March, 1926, in the sum of $1,224.30, and that, after the entry of said judgment, an execution was duly issued, and that, after diligent search and inquiry, the levying officer was unable to find any property belonging to the defendant A. W. Schumacher upon which to levy, and that the said execution was returned wholly unsatisfied.

"The plaintiff by this action now seeks to recover another judgment against the defendant A. W. Schumacher for the amount of the former judgment, and to hold the defendant and appellant state bonding department liable for the amount of such judgment."

The official bond of the sheriff referred to in the complaint was in the following form:

"Know all men by these presents that we, A. W. Schumacher, of Ipswich, S. D., as principal, and the state of South Dakota, as surety, are held and firmly bound unto the county of Edmunds, state of South Dakota, in the penal sum of three thousand and no/100 ($3,000.00) dollars, lawful money of the United States of America, the payment of which, well and truly to be made, we bind ourselves, our heirs, executors, administrators, successors, and assigns, jointly and severally, by these presents. Sealed with our seals and dated this 6th day of January, 1925.

"Whereas the said A. W. Schumacher has been duly elected to the office of sheriff within and for the county of Edmunds, in the state of South Dakota:

"Now, therefore, if the said A. W. Schumacher shall faithfully and impartially discharge the duties of his office as sheriff, and render a true account of all moneys, accounts, and property of any kind that shall come into his hands as such officer, and pay over and deliver the same according to law, then the above obligation shall be null and void, otherwise to be in full force and effect. The payment of any loss by the surety shall be made out of the state bonding fund. This bond becomes effective after January 6, 1925.

In witness whereof said principal has hereunto set his hand and seal, and the state of South Dakota has caused this bond to be sealed with the seal of the commissioner of insurance, and signed by its duly authorized officer, the day and year first above written."

Appellant presents two propositions in support of its demurrer.

The state bonding department was created by chapter 318, Laws 1919, and section 12 of that act reads as follows:

"In the event of any default in the condition of any bond or of any loss by the state or by any department or institution or by any county, immediate notice thereof in writing shall be given to the commissioner of insurance, who shall immediately notify the executive accountant, and it shall be his duty to examine the accounts of the defaulting officer or employee and to make full disclosure to the commissioner of insurance of the results of such examination, and the commissioner of insurance shall thereupon make such adjustment and settlement with the injured party as may be equitable and just."

Appellant maintains that the complaint is fatally defective, because it fails to state that this immediate notice in writing of the officer's default was given to the commissioner of insurance, as required by the statute, advancing the contention that the giving of such notice is a condition precedent to any liability, and that it was essential for respondent to plead either the giving of such notice or facts excusing the same.

In considering this question, we have first to observe that, generally speaking, a contract of fidelity insurance is subject to the same general rules of construction that apply to other insurance contracts, and guaranteeing the fidelity of an employee or officer is a form of insurance rather than suretyship, as the terms are ordinarily used. It follows that, if such a contract, looking at all

its provisions, is fairly susceptible of two constructions, one of which is more favorable to the insured than the other, the construction most favorable to the insured should be adopted. Bolte v. Equitable Fire Association, 23 S. D. 240, 121 N. W. 773; Farmers', etc., Bank v. U. S. F. & G. Co., 28 S. D. 315, 133 N. W. 247, 36 L. R. A. (N. S.) 1152.

The state of South Dakota having undertaken, by chapter 318, Laws 1919, and amending acts, to embark upon the business of a paid insurer of the fidelity of certain public officers and employees, we are not impressed with the idea that the state should or can expect the fidelity contract uttered by its bonding department to be construed any differently from a similar contract uttered by any other paid insurer of fidelity. Certainly, if all the terms of the statute creating the state bonding department and providing for its operation be imported into the contract issued by the department and construed with it, the state is receiving the maximum of legal consideration to which it should be entitled, arising exclusively from the fact that the insuring agency is a department or agency of the state rather than a private individual or corporation.

Thus importing the provisions of section 12, c. 318, Laws 1919, into the insurance contract, we have, in substance, a contract which provides for immediate notice of default to the commissioner of insurance, but which does not by any express terms require compliance with said notice provision as a condition precedent to action on the bond, and does not by any express terms erect a forfeiture upon failure to comply therewith. The question then becomes this: Is the provision for notice under those circumstances a condition precedent, as appellant contends, and hence necessary to be pleaded and proved or excused in the complaint, or is it, as respondent, contends, a condition subsequent, failure to comply with which may be availed of as a defense by way of answer to the extent, and to the extent only, which said failure to comply has injured the insurer?

The cases are not entirely free from conflict upon this question. The conflict is perhaps more apparent than real because of some confusion with cases where the terms of the insurance contract or of a statute did in fact expressly make the requirement as to notice a condition precedent, or expressly or by fair implication predicated a forfeiture upon noncompliance therewith.

154

We are of the view, however, that the weight of authority and better reasoning supports the rule that the bare requirement for notice, standing alone, is not a condition precedent, and failure to comply therewith is a matter of defense, to be pleaded and proved by the insurer, if and to the extent that the insurer can show injury thereby. See Dixon v. State Mutual Insurance Co., 34 Okl. 624, 126 P. 794, L. R. A. 1915F, 1210 and note at 1211. United, etc., Co. v. American Bonding Co., 146 Wis. 573, 131 N. W. 994, 40 L. R. A. (N. S.) 661; Dixie Fire Insurance Co. v. American Bonding Co., 162 N. C. 384, 78 S. E. 430.

The second contention of appellant in support of its demurrer is based upon section 8 of chapter 318, Laws 1919, which provides as follows:

"All actions brought to recover any losses under the provisions of this act shall be instituted in the name of the real party in interest against the state bonding department and the officer or employee who shall be in default, and a copy of the summons and complaint shall be served upon the commissioner of insurance, who shall be authorized to admit service thereof. No judgment shall be ever entered against the state, for it is the true intent and meaning of this act that the state shall incur no actual liability, and all losses shall be paid out of the funds accruing to the state bonding department from premiums paid, and any judgment entered in any court of this state shall be for the payment of the amount thereof out of any moneys accruing to the state bonding department in the state bonding fund, and as to all judgments so paid out of the funds accruing to the state bonding department the doctrine of subrogation shall apply, and the state bonding department in an action to be brought in its name by the commissioner of insurance shall be entitled to recover against the defaulting officer or employee, or may issue or cause to be issued final process on the original judgment without further action."

In this connection appellant maintains that respondent has waived her right to action upon the bond of the defendant sheriff and against the state bonding department, because, as appears upon the face of the complaint, she previously sued the defendant sheriff, and secured judgment upon the same claim which she now seeks to enforce against the state bonding department without joining said bonding department as a party defendant. Appellant

frankly admits that this contention is entirely contrary to the general rule of law, and particularly that it conflicts with the situation recognized by this court in the case of Connor v. Corson, 13 S. D. 550, 83 N. W. 588 (affirmed on rehearing, 13 S. D. 618, 84 N. W. 191). We think that appellant overlooks the distinction between a proceeding against the principal for the damage suffered and a proceeding upon the bond. The right to proceed against the principal before resorting to the bond has always been recognized, and the only question has been whether, if resort to the bond was afterward necessary, the prior judgment against the principal was conclusive upon the surety, or merely prima facie evidence against the surety. This court stands ' committed to the latter rule by Connor v. Corson, supra, but we are not able to see anything in the section of the statute last above quoted which prohibits a person damaged by the malfeasance of a public officer from first proceeding directly against the officer without resorting to his bond, nor which requires a person so injured to elect whether he will proceed against the officer or against the bond, nor which prohibits such person from resorting to the bond merely because he has first unsuccessfully endeavored to collect from the officer. We are of the opinion that section 8, chapter 318, Laws 1919, refers distinctly and exclusively to actions instituted upon the bond. But for such section an individual damaged by malfeasance of a public officer bonded by the state might sue the officer for damages and recover judgment, and, failing to secure payment thereof, might bring action against the state bonding department upon the officer's bond, in which action the judgment against the officer would be prima facie evidence of liability and damage, and in which action the officer himself would not need to be joined. Section 8 requires the officer who has been guilty of the default to be made a party to the action upon the bond, and the object of so doing is perhaps discernible in the latter part of the section, wherein it is provided that the state bonding department may have subrogation, and that it may recover in an action against the defaulting officer, or may recoup by causing final process to be issued against the defaulting officer on the very judgment obtained by the plaintiff in the action on the bond wherein the state bonding department and the defaulting officer are both defendants; in other words, there is contemplated a binding fixation of liability and the amount

thereof as between the state bonding department and the defaulter as well as between the beneficiary and the surety, and a short cut to subrogation. We do not believe this section of the statute can be given any broader effect.

We are of the opinion that the learned trial judge rightly ruled the issues presented adversely to appellants, and the order overruling the demurrer will be affirmed.

POLLEY, SHERWOOD, BURCH, and BROWN, JJ., concur.